UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

| | |
|---|---|
| CITY OF HILLVIEW, KENTUCKY | CASE NO. 15-32679 |
| DEBTOR | CHAPTER 9 |

**CITY OF HILLVIEW, KENTUCKY'S MEMORANDUM OF FACTS AND AUTHORITIES IN SUPPORT OF ITS STATEMENT OF QUALIFICATIONS UNDER 11 U.S.C. § 109(c)**

Comes the City of Hillview, Kentucky ("the City" or "Debtor"), by counsel, and submits this Memorandum of Facts and Authorities in support of its Statement of Qualifications under 11 U.S.C. § 109(c) (the "Statement of Qualifications") filed contemporaneously herewith.

## I. INTRODUCTION

1. The City filed its petition for relief under Chapter 9 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), on August 20, 2015.

2. In connection with the filing of its petition, the City has filed its Statement of Qualifications and sworn Declaration of Mayor Jim Eadens in Support of Statement of Qualifications, which certify that the City satisfies each of the five eligibility criteria set forth in Section 109(c) to be a Chapter 9 debtor and has filed this proceeding in good faith. This Memorandum is submitted in support of Debtor's eligibility to be a debtor in this Chapter 9 case, and Debtor requests entry of an order for relief.

## II.  FACTUAL BACKGROUND

3. The City of Hillview is a small community located in Bullitt County, Kentucky. It is governed by the council/mayor form of local government under Kentucky statutory requirements.

4. The City's presently annexed property boundaries covers approximately 3.3 square miles with a population of approximately 9,000 residents.

5. The City's annual revenues average in the range of approximately $2.7 million to $3.0 million per fiscal year. Cities in Kentucky are required to operate within a balanced budget each year. Cities prepare and approve their estimated budgets at the beginning of each fiscal year, and then complete their actual budgets near the end of each fiscal year.

6. As of 2010, the United States Census Bureau reported that approximately 28% of the City's population is under age 18 and 10% of its population is over age 65. Its population is aging and each year the percentage over age 65 is believed to be growing.

7. The City shares its northern border with Louisville, Jefferson County, Kentucky. Many of its residents commute to and from Louisville each day for work, and some non-residents also commute in to work within the Hillview city limits.

8. For 2013, the Census Bureau reported that the median annual income for City residents was $61,278 per family, and approximately 65% of City residents age 16 and older were in the labor force.

9. While the City has been and continues to be committed to operating in a fiscally responsible manner, recent events have rendered the City unable to pay all its debts as they have become due, primarily being the final judgment which is presently due and owing.

10. Since 2005, the City has been involved in state trial court and appellate litigation with Truck America Training LLC ("Truck America") and certain individual LLC members regarding a dispute over the sale of certain real property located in Bullitt County, Kentucky by the City to Truck America the LLC members pursuant to a written "Lease-Purchase Offer" agreement entered into in 2002. The matter originated in litigation styled *Truck America Training LLC, et al. v. City of Hillview, et al.*, Bullitt Circuit Court, Case No. 05-CI-00374.

11. A summary judgment was initially entered in favor of the City, but was later reversed and remanded back to the trial court for a jury trial. Following a jury trial, a jury verdict and judgment were entered by the Circuit Court, in favor of Truck America and against the City, on August 24, 2012, which awarded lost-profit damages to Truck America in the amount of $11,435,259.49, plus interest at the statutory rate of 12% per annum (the "Judgment"). The Judgment also addressed specific performance obligations related to the property in dispute, an approximate 40 acre tract of raw land located near I-65.

12. The City was represented in the trial by its former city attorney, and the City engaged additional counsel for appellate work. The Judgment was appealed to the Kentucky Court of Appeals, where it was upheld on appeal, Case No. 2012-CA-001910. The Kentucky Supreme Court declined to grant discretionary review, Case No. 2014-SC-000293, in an order entered March 25, 2015.

13. Immediately following the entry of the denial of discretionary review, Truck America (the "Judgment Creditor"), through its trial counsel Stites and Harbison, made demand for payment in full on the Judgment, stating that as of April 1, 2015, the balance due of the Judgment, including post judgment interest, was approximately $15 million. The Judgment Creditor threatened to garnish the City's bank accounts and to otherwise initiate immediate

collection efforts, which would have been grossly and possibly irreparably disruptive to the City and to the public interests.

14. Since the Judgment Creditor had previously served papers to seek to garnish the City's primary operating bank account (which garnishment was ultimately released without any collection), the City was deeply concerned over possible attempts at aggressive collection efforts which were in dispute. Collection on judgments against municipal entities is a greatly different body of law than routine post-judgment collection that many attorneys and courts are familiar with in the private sector.

15. Given that the face amount of the Judgment is many times larger than the City's total annual budget, and that the City had no present ability to pay within current budgetary constraints, the City had previously retained the undersigned counsel during the appeal process for advice. The City had also retained a new city attorney in 2015 before the entry of the denial of the discretionary review order. City representatives, working with these professionals (neither of whom were involved in the underlying litigation) have spent significant time analyzing potential options for attempting to begin to satisfy the Judgment while still maintaining ongoing public obligations to the citizens of Hillview.

16. The City has engaged in extensive settlement negotiations and discussions with the Judgment Creditor since March 2015, and had engaged in some less extensive discussions prior to that time (while the Judgment was pending discretionary review).

17. In April 2015, the City and the Judgment Creditor participated in a formal mediation, conducted at Stites and Harbison offices in Louisville, Kentucky, with a retired former bankruptcy judge serving as the mediator, former Judge Steven Rhodes. The parties participated

in a full – day mediation, were very far apart, and were unable to reach any agreement regarding a consensual repayment on the Judgment.

18.     As a condition to participating in a mediation, and as a condition to forebear from immediate collection efforts, the Judgment Creditor demanded, and the City conceded, to entering in to a partial agreement, a copy of which is attached to the Declaration of the Mayor filed herewith. This agreement was entered in to within one year preceding the bankruptcy filing.  The partial agreement speaks for itself, and basically involved the City deeding the disputed property to the Judgment Creditor in exchange for an $815,300 credit against the Judgment. The Judgment Creditor has the property listed for sale now for $3.6 million.  The City also made a partial cash payment, via wire transfer, for $65,300.

19.     After many further communications to attempt to formulate some resolution, but recognizing that the parties were vastly far apart, the Judgment Creditor filed a writ of mandamus collection action in Bullitt Circuit Court, Case no. 15-ci-00374, on April 30, 2015.  The Judgment Creditor sought entry of orders directing the City to pay the judgment in full, asserting that interest was accruing each day in excess of $3000 per diem.

20.     There is obviously much more detail regarding this long course of dealing with the Judgment Creditor. The City is advised that the Judgment Creditor will be aggressively challenging the filing, eligibility, and entry of any order for relief.  The City reserves its rights to supplement the record with more detail if that course of action is indeed pursued.

21.     The City generally discussed the possible filing with other major creditor constituents in advance of filing.  There are few to no known issues with other creditors at this time.

5

22. The City is seeking relief under Chapter 9 of the Bankruptcy Code because it has exhausted all other options. While the City is generally able to pay its ordinary obligations as they come due in the ordinary course, it is unable to pay the Judgment and its asserted interest accrual as they come due, and it has been unable to develop any solution that is acceptable to the Judgment Creditor. Recognizing this reality, the City Council voted (Resolution 2015-27) to authorize the City to file a petition for relief under Chapter 9 of the Bankruptcy Code in an effort to adjust its debts in a responsible and fiscally-sound manner.

### III.  THE CITY IS ELIGIBLE TO BE A DEBTOR UNDER CHAPTER 9 OF THE BANKRUPTCY CODE

23. "The general policy considerations underlying the municipal debt adjustment plan of chapter 9 are . . . to give the debtor a breathing spell from debt collection efforts and establish a repayment plan with creditors." *In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 649 (Bankr. E.D. Mich. 1994) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977); *see also In re Valley Health Sys.*, 383 B.R. 156, 163 (Bankr. C.D. Cal. 2008) ("Chapter 9 of the Bankruptcy Code affords a municipality temporary protection from debt collection efforts so that it may establish a plan of adjustment with its creditors."). This allows a municipality to "remain in existence through debt adjustment and obtain temporary relief from creditors." *Id.*

24. To be eligible for relief under Chapter 9, a municipality must meet the following criteria set forth in Section 109(c) of the Bankruptcy Code:

An entity may be a debtor under chapter 9 . . . if and only if such entity:

    (1)    is a municipality;

    (2)    is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;

  (3) is insolvent;

  (4) desires to effect a plan to adjust such debts; and

  (5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

   (B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

   (C) is unable to negotiate with creditors because such negotiation is impracticable; or

   (D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

11 U.S.C. §§ 109(c)(1)-(5)[1].

  25. The City bears the burden of satisfying each of these criteria by a preponderance of the evidence. *In re City of Stockton, Cal.*, 493 B.R. 772, 794 (Bankr. E.D. Cal. 2013) ("[I]t is straightforward that the § 109(c) eligibility elements are matters as to which the City has the affirmative burden to establish in all respect by preponderance of the evidence . . . ."); *see also In re City of Vallejo*, 408 B.R. 280, 289 (B.A.P. 9th Cir. 2009) (expressly rejecting the application of "the more rigorous clear and convincing burden of proof" standard in Chapter 9 eligibility determinations). When evaluating whether the City has satisfied its burden under Section 109(c), Courts generously construe the 109(c) requirements broadly "to provide access to relief in furtherance of the Code's underlying policies." *Vallejo*, 208 B.R. at 289 (quoting *In re Valley Health Sys.*, 383 B.R. 156, 163 (Bankr. C.D. Cal. 2008)); *see also In re Barnwell Cnty. Hosp.*, 471

---

[1] If there are objections to eligibility and the entry of an order for relief, Debtor reserves its right to supplement each of these elements and 11 U.S.C. § 921 issues with additional evidence and authorities.

B.R. 849, 859 (Bankr. D.S.C. 2012); *In re Pierce County Hous. Auth.*, 414 B.R. 702, 710 (Bankr. W.D. Wash. 2009); *In re City of Wellston*, 42 B.R. 282, 284 (Bankr. E.D. Mo. 1984) (describing the Chapter 9 eligibility requirements as "minimal" and finding eligibility based solely on statement of qualifications and limited testimony in support).  For the reasons set forth below, the City has met its burden to satisfy all requirements of 11 U.S.C. § 109(c) and is eligible to be a debtor under Chapter 9.  Debtor requests entry of an order for relief.

**A.    The City is a Municipality.**

26.    Section 109(c)(1) requires that a petitioner under Chapter 9 must be a municipality. 11 U.S.C. § 109(c)(1).  The Bankruptcy Code defines a "municipality" as a "political subdivision or public agency or instrumentality of a State."  11 U.S.C. § 101(40).  The City has been an incorporated city of the Commonwealth of Kentucky since March 28, 1974.  It is commonly known as a city of the "fourth class"[2] and has "home rule" power pursuant to K.R.S. § 82.082, promulgated under Section 156b of the Kentucky Constitution, subject to any limitations on the exercise of that power under Kentucky law.  Accordingly, the City is a "political subdivision" and, thus, a "municipality" of Kentucky within the meaning of 11 U.S.C. § 101(40).  Debtor satisfies the eligibility requirement of 11 U.S.C. § 109(c)(1).

**B.    The City is Authorized by Kentucky Law to File its Petition**

27.    Section 109(c)(2) requires that a petitioner under Chapter 9 must be specifically authorized under state law to be a debtor under Chapter 9.  11 U.S.C. § 109(c)(2).  As a city in Kentucky, the City's Chapter 9 authorization is governed by Kentucky law.  K.R.S. § 66.400 provides in relevant part as follows:

> Any taxing agency or instrumentality as defined in Chapter IX of the Federal Bankruptcy Act as amended by the Acts of Congress of August 16, 1937, Chapter 657, June 22, 1938, Chapter 575, March

---

[2] The long-standing "city classifications" were changed recently by the Kentucky legislature.

8

>4, 1940, Chapter 41, June 28, 1940, Chapter 438 and acts amendatory and supplementary thereto or acts extending the date of expiration thereof, as the same may be amended or extended from time to time, may file a petition for the composition of its debts and to do all things necessary to comply with the provisions of the Federal Bankruptcy Act.

28. The phrase "taxing agency or instrumentality" in this statute was drawn from the prior Bankruptcy Act of 1898, and through various Acts and amendments, it has since been replaced by the term "municipality" in the modern Bankruptcy Code. *See* 11 U.S.C. § 101(40). For the reasons set forth herein above, the City is a "municipality" under the Bankruptcy Code, and therefore, it is authorized by K.R.S. § 66.400 to file a petition and do all things necessary to comply with the provisions of the Code, including under Chapter 9. Even if the prior "taxing agency or instrumentality" language is applied, the City still meets the requirements of K.R.S. § 66.400 because it imposes and collects taxes and is thus a "taxing agency or instrumentality" of the Commonwealth of Kentucky. Debtor satisfies the requirements of 11 U.S.C. § 109(c)(2).

C. **The City is "Insolvent" as defined within Chapter 9 terms under 11 U.S.C. § 109(c)(3).**

29. Section 109(c)(3) requires that a petitioner under Chapter 9 must be "insolvent," as defined for Chapter 9 purposes, to be a debtor under Chapter 9. 11 U.S.C. § 109(c)(3). Section 101(32)(C) of the Bankruptcy Code provides that "with reference to a municipality, financial condition such that the municipality is— (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due." 11 U.S.C. § 101(32)(C). "The theme underlying the two alternative definitions of municipal insolvency in § 101(32)(C) is that a municipality must be in bona fide financial distress that is not likely to be resolved without use of the federal exclusive bankruptcy power to impair contracts." *City of Stockton*, 493 B.R. at 778. To that end, "[t]he insolvency must be real and not transitory." *Id.*

9

30. "Chapter 9 insolvency" is determined based on the debtor's financial condition as of the date the petition is filed. *In re City of Bridgeport*, 129 B.R. 332, 337 (D. Conn. 1991) (citing H.R.Rep. No. 1011, 100th Cong., 2d Sess. 5–6 (1988)). "Chapter 9 insolvency" is primarily evaluated under a cash flow analysis, as opposed to a balance sheet or a budget deficit analysis. *Id.* at 337. A municipality is not required to wait until it runs out of money and defaults on its debts before it is deemed to be "chapter 9 insolvent," which would be incongruous to the Chapter 9 goal of allowing a city to "'continue to provide its residents with essential services, such as police protection, fire protection, sewage, garbage removal, and schools . . . .' while it works out a plan to adjust its debts and obligations." *Id.* at 336-37 (citing H.R.Rep. No. 1011, 100th Cong., 2d Sess. 2 (1988, U.S. Code of Cong. & Admin.News 1988, pp. 4115, 4116). Instead, whether a municipality will be unable to pay its debts when due is a prospective analysis. *Id.* at 336. A municipality that demonstrates that "it will be unable to pay its debts as they become due in its current fiscal year, or based on an adopted budget, in its next fiscal year" is "chapter 9 insolvent" for eligibility purposes under 11 U.S.C. § 109(c)(3). *Id.* at 338 (cited with approval in *Pierce County*, Supra, 414 B.R. at 710-11).

31. Debtor in this case is "chapter 9 insolvent" for eligibility purposes because it is "unable to pay its debts as they become due." *See* 11 U.S.C. § 101(32)(C)(ii). The Judgment Creditor insists that the Judgment is fully due and payable, and that is the nature of a judgment debt. It is not payable over time, it is payable in full. The City's approved budget for the current fiscal year running from July 1, 2015 through June 30, 2016 fiscal year is attached to the Declaration filed herewith (the "Current Budget"). A review of the Current Budget indicates that the City anticipates revenues of approximately $3.2 million for the current fiscal year and has planned for appropriations/expenditures of approximately the same amount. This does include

10

what the City had proposed in the mandamus case as an initial short- term effort to begin to pay on the Judgment: $100,000 in the year 2015-2016, while the parties were working toward any ultimate resolution. There was never any agreement by the Judgment Creditor to this payment. While the City believes that it has and will continue to operate within the bounds of the Current Budget for the remainder of the fiscal year, the City cannot do so and satisfy the outstanding Judgment amount of $15 million, which is currently due and is not included in the Current Budget. Under the law, the City must act in a manner to protect the health, safety and welfare of its citizens at all times.

32.     Against this background, the City is insolvent within the meaning of 11 U.S.C. § 101(32) and has therefore satisfied the Chapter 9 eligibility requirement of 11 U.S.C. § 109(c)(3).

**D.     The City Desires to Effect a Plan to Adjust Its Debts.**

33.     Section 109(c)(4) of the Bankruptcy Code requires that an entity demonstrate that it "desires to effect a plan to adjust [its] debts." 11 U.S.C. § 109(c)(4). "There is no specific test to determine when a municipality satisfies this requirement." *New York City Off-Track Betting Corp.*, 427 B.R. 256, 272 (Bankr. S.D.N.Y. 2010) (citing *Vallejo*, 408 B.R. at 295)). "[N]o bright-line test exists for determining whether a debtor desires to effect a plan because of the highly subjective nature of the inquiry under 11 U.S.C. § 109(c)(4)." *Vallejo*, 408 B.R. at 295. The petitioner "may satisfy this subjective requirement with direct and circumstantial evidence," sufficient to show that the "purpose of the filing of the chapter 9 petition not simply be to buy time or to evade creditors." *Id.* at 295 (quoting 2 COLLIER ON BANKRUPTCY ¶ 109.04[3][d], at 109-32 (15th ed. 2009)); *Off-Track*, 427 B.R. at 272 (same). "Courts examining this requirement have determined that a filed statement indicating intent to affect a plan of reorganization, combined with

11

efforts made towards negotiating and drafting a plan, fulfill this requirement." *Off-Track* at 272 (citing *Pierce County*, 414 B.R. at 710).

34. The City has stated its desire to effect a plan to adjust its debts in the Statement of Qualifications, which Statement is sworn to by City Mayor Jim Eaden. This desire and intention is manifest in the City's efforts to restructure its debts prior to the commencement of this Chapter 9 proceeding. The City has negotiated extensively with Truck America as its largest creditor to try and develop a suitable payment arrangement for the Judgment, including participating in a formal mediation. The City has neither stone-walled nor stormed off, regardless of the tenor and tone of some of the demands that have been communicated. The City has held numerous meetings, special council meetings, and otherwise worked very hard to analyze different options, but nothing the City has proposed has been acceptable to the Judgment Creditor, who further insists that $3000-plus per day is clicking away, each day making it even more remote that the amount could ever be paid in full.

35. There are some sizeable disagreements over various legal points and rights of the parties, and there are some areas of bankruptcy law which may be contested including any ultimate plan treatment. The City has been and continues to review its cash flows, revenue sources, and regular expenses to formulate potential methods to satisfy the Judgment over time along with all of its other regular obligations. As part of those negotiations and analyses, the City has developed general parameters for a plan which it believes can reasonably be satisfied. The City desires to effect such a plan through this bankruptcy case. Debtor satisfies the requirements of 11 U.S.C. § 109(c)(4).

**E.      The City Meets the Negotiation Requirement(s) under 11 U.S.C. § 109(c)(5).**

36.     Section 109(c)(5) requires that a municipality either: (1) have obtained the agreement of creditors that will be impaired under a plan; (2) negotiated with its creditors unsuccessfully prior to seeking relief; (3) demonstrate that such negotiation was impracticable; or (4) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under 11 U.S.C. § 547.  11 U.S.C. § 109(c)(5)(A)-(D).  These tests are written in the disjunctive, so the City must only satisfy one of the four to be eligible for Chapter 9 relief.  The City states that is satisfies each of these other than subpart (A), and which section is relatively immaterial.

37.     Section 109(c)(5)(B) requires that the City demonstrate that it has "negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that [it] intends to impair under a plan."  11 U.S.C. § 109(c)(5)(B).  Under this element, negotiations need not revolve around a "complete plan," but "some outline or term sheet of a plan which designates classes of creditors and their treatment is necessary."  *Vallejo*, 408 B.R. at 297 (noting that 11 U.S.C. § 109(c)(5)(B) is satisfied where the debtor conducts "negotiations with creditors revolving around a proposed plan, at least in concept . . . . [that] designates classes of creditors and their treatment . . . .").

38.     As discussed, the City has been involved in extensive and ongoing negotiations with its Judgment Creditor concerning potential options for an agreed upon payment amount and schedule for satisfaction of the Judgment.  It has had discussions with other creditors, but the issues there are not difficult, challenging or contested.  Despite many attempts, the City has been unable to obtain any agreement regarding a settlement or an impaired plan treatment.  Accordingly, the City satisfies the requirements of 11 U.S.C. § 109(c)(5)(B).

39. As an alternative basis for satisfying 11 U.S.C. § 109(c)(5)'s requirements, the City was unable to continue any further negotiation as the parties were actually beginning to move further apart. The Judgment Creditor has cast aspersions on the City's motives for many years, and there appears to be hard feelings and distrust. Ongoing negotiation became impracticable. *See* 11 U.S.C. § 109(c)(5)(C). The definition of "impracticable" is broad. *Vallejo*, 408 B.R. at 298. It may be shown by a need to file a petition quickly to preserve assets or to act quickly to protect the public from harm. *Vallejo* at 298 (citing *also Valley Health*, 383 B.R. at 163 ("Negotiations may also be impracticable when a municipality must act to preserve its assets and a delay in filing to negotiate with creditors risks a significant loss of those assets."); 2 COLLIER ON BANKRUPTCY ¶ 109.04[3][e][iii] ("[W]here it is necessary to file chapter 9 case to preserve the assets of a municipality, delaying the filing to negotiate with creditors and risking, in the process, the assets of the municipality makes such negotiations impracticable.")). However, "Courts may find negotiations impracticable in more than these limited circumstances." *Off-Track* at 277. Courts have also applied a "plain meaning" approach using the dictionary definition of impracticable "to conclude that impracticability of negotiations is a fact-sensitive inquiry that 'depends on the circumstances of the case.'" *Off-Track* (citing *Vallejo* at 298; *Valley Health*, 3838 B.R. at 161-63; *Pierce County*, 414 B.R. at 713 ("Whether negotiations with creditors is impracticable depends on the circumstances of the case.") (internal citation omitted)).

40. Finally, the City also had reason to believe that as part of the mandamus process, the Judgment Creditor was seeking and might obtain some ruling or collection which could be avoidable under bankruptcy law. There is already an issue of potential avoidability under 11 USC §548 regarding the value of the property, now listed for sale for $3.6 million and for which an $800,000 credit was agreed within one year before filing.

14

41. Bankruptcy policy disfavors a race to the courthouse. The City understands the Judgment Creditor has a right to just look out for itself, but the City has many different constituencies to deal with on a daily basis, has the health, safety and welfare of its citizens to always consider, and cannot permit any disruption of public services. The City will not elevate the interests of one Judgment Creditor over the rights of all other parties in interest.

42. Debtor satisfies the requirements of 11 U.S.C. § 109(c)(5), either under (B), (C), or (D).

### F. The City Filed its Petition in Good Faith.

43. "Although this is not an eligibility requirement per se, [11 U.S.C.] § 921(c) provides that a court may dismiss a Chapter 9 petition if the debtor did not file the petition in good faith." *Pierce County*, 414 B.R. 714. Since "good faith" is not defined in the Code and the legislative history of 11 U.S.C. § 921(c) does not provide any clarification, "courts have looked to discussions of good faith in the chapter 11 context to determine whether a chapter 9 petition has been filed in good faith." *Off-Track*, 427 B.R. at 278-79 (citations omitted).

> The leading treatise lists six different factors that courts may examine when determining whether a petition under chapter 9 was filed in good faith: (i) the debtor's subjective beliefs; (ii) whether the debtor's financial problems fall within the situations contemplated by Chapter 9; (iii) whether the debtor filed its Chapter 9 petition for reasons consistent with the purposes of Chapter 9; (iv) the extent of the debtor's prepetition negotiations, if practicable; (v) the extent that alternatives to Chapter 9 were considered; and (vi) the scope and nature of the debtor's financial problems.

*Id.* at 279 (citing 6 Collier on Bankruptcy ¶ 921.04[2]); *see also Pierce County*, 414 B.R. at 714 (same). Courts also consider the broad remedial purposes of bankruptcy generally as part of any good faith analysis. *In re City of Detroit, Mich.,* 504 B.R. 97 ( Bankr. E.D. Mish. 2013).

44. The City only made its final decision to file its Chapter 9 petition after months of ongoing negotiations and a failed formal mediation. Although the City strongly desires to satisfy all of its financial obligations, it is simply unable to pay all bills as they come due when some unknown amount is due or not due each month on a Judgment, which is stated to be adding interest at over $3000 per day. More recent demands have included demands for sizeable payments just for the privilege of more time to explore options. The City's offers to let the Judgment Creditor have full access, through any financial consultant it wanted, to the City's financial books and records, and offers to have them communicate directly with the City's long-time outside auditor, were declined. The City states it has acted in good faith throughout and will continue to do so.

45. Most courts only explore the "good faith" if there are objections on this point. The City will not go further at this time, but reserves its rights to further address any objections which may be filed.

46. The City made the difficult decision to file its Chapter 9 petition not to delay payments to its creditors or as a litigation tactic, but rather to seek the benefits of a bankruptcy process that will enable the City to continue operating while developing a plan to pay all creditors under appropriate terms and in appropriate amounts. In light of all of these facts and circumstances, Debtor states that it filed its Chapter 9 petition in good faith.

## IV. **CONCLUSION**

For all the reasons set forth herein, the City respectfully submits that it is eligible under Chapter 9 of the Bankruptcy Code pursuant to 11 U.S.C. § 109(c) and requests entry of its order for relief.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Laura Day DelCotto, Esq.
Jamie L. Harris, Esq.
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
ldelcotto@dlgfirm.com
jharris@dlgfirm.com
COUNSEL FOR THE CITY
OF HILLVIEW, KENTUCKY

## CERTIFICATE OF SERVICE

It is hereby certified that on August 28, 2015, true and correct copies of the foregoing pleadings were: (a) served electronically through the U.S. Bankruptcy Court's ECF System to the electronic addresses as set forth in the ECF System to the U.S. Trustee and all other persons receiving electronic notifications in this case, and (b) mailed electronically or via U.S. Mail to all parties listed on the proposed MSL herein.

/s/ Laura Day DelCotto, Esq.
COUNSEL FOR THE CITY
OF HILLVIEW, KENTUCKY

Z:\Qualification Stmt Memo of Law & Fact V2 20150428.docx