## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **In re:**<br><br>**CITY OF HILLVIEW, KENTUCKY,**<br><br>    **DEBTOR.** | **Case No. 15-32679**<br><br>**CHAPTER 9** |

### OBJECTION OF TRUCK AMERICA TRAINING, LLC TO THE
### CHAPTER 9 PETITION FILED BY CITY OF HILLVIEW, KENTUCKY

Truck America Training, LLC ("Truck America"), a creditor of the City of Hillview, Kentucky ("Hillview" or the "City"), submits this Objection to the Chapter 9 Petition filed by Hillview, and requests dismissal of this proceeding pursuant to 11 U.S.C. § 921(c). As set forth below, Hillview cannot sustain its burden of establishing eligibility under 11 U.S.C. § 109(c) and has not filed its petition in good faith. Accordingly, Truck America states as follows:

### INTRODUCTION

Hillview did not file Chapter 9 in good faith to adjust its debts, or to ameliorate bona fide financial distress. Rather, it admits to being "fiscally sound," and filed this case for the specific purpose of minimizing the amount it will be required to pay one creditor—Truck America—on account of a judgment affirmed by Kentucky's appellate courts. That is simply not a legitimate Chapter 9 objective. As the negotiation history and the evidence at trial will reveal, Truck America was the only constituent asked to make any sacrifices. Hillview's most significant settlement offer was to pay Truck America a mere 14 cents on the dollar, but no other creditor has been asked to consider *any* discounts, let alone of similar magnitude. Further, although it has abundant capacity to increase taxes and sell bonds—and could have used those tools to resolve

the judgment at a large discount without having to file Chapter 9—Hillview has unjustifiably refused to do so.

Hillview is not Chapter 9 eligible for multiple reasons, including:

- It utterly failed to negotiate with creditors regarding the *terms of a plan of adjustment*, or to provide basic financial projections to enable creditors to evaluate a plan proposal. At best, it conducted bilateral negotiations with Truck America to attempt to settle a litigation judgment for nuisance value, but it has never advised Truck America (or apparently, anyone else) how creditors will be classified, which classes will be impaired, and how a plan would be funded. During these bilateral negotiations, Hillview regressively bargained.

- It cannot demonstrate such negotiations were impracticable.

- It cannot demonstrate any reasonable belief that a creditor sought to obtain a preference.

- It cannot prove insolvency as defined in Section 101(32)(C), which requires evidence that it is "generally not paying its debts" or that it will be "unable to pay its debts" as they become due. Balance sheet insolvency is not sufficient in Chapter 9, and within the bounds of the Kentucky Constitution, Hillview was capable of raising taxes to generate an additional $4.7 million per year, and use that revenue to fund bonds to pay the judgment in full.

- It cannot prove that it desires to effect a plan to adjust its debts. At most, Hillview's "desire" is to pay one creditor as little as possible and apparently, every other creditor in full. By seeking to require a single creditor to shoulder all of its financial problems, Hillview fails this requirement.

- It cannot prove it filed its Chapter 9 petition in good faith.

Accordingly, Truck America requests that the Court decline to enter an order for relief.

### Factual Background and Procedural History

1. In April of 2005, Truck America sued Hillview for breach of contract after Hillview refused to convey to Truck America a 40-acre parcel of land located at 364 Ferguson Lane (the "Property") in Bullitt County. After a jury trial in that case, styled *Truck America Training, LLC, et al. v. City of* Hillview, No. 05-CI-00374 (Bullitt Cir. Ct.), the court entered a judgment (the "Judgment") in favor of Truck America, ordering Hillview to: (i) convey the

Property to Truck America; and (ii) pay Truck America $11,435,259.49, plus post-judgment interest at the statutory rate of 12%.  (**Ex. 1.**)  Hillview then commenced three years of appeals.

2. During the trial phase and the appeal, Truck America made numerous written offers and overtures to Hillview to resolve the litigation. (**Exs. 2-6.**) Hillview did not reciprocate, and never made a counteroffer entailing the payment of money to Truck America until after the Judgment was affirmed by a unanimous panel of the Kentucky Court of Appeals on March 7, 2014. *See City of Hillview v. Truck Am. Training, LLC*, No. 2012-CA-00919-MR, 2014 Ky. App. Unpub. Lexis 1033 (Ky. Ct. App. Mar. 7, 2014) (unpublished).

3. On March 10, 2014, counsel for Truck America wrote to Hillview's counsel, Gregg Neal, advising him that the Judgment exceeded $13.4 million, that the Kentucky Supreme Court was unlikely to grant discretionary review, and seeking a settlement offer entailing transfer of the Property and a substantial monetary payment. (**Ex. 7.**) On March 12, 2014, Mr. Neal responded that, "I am not participating in any negotiations," and deferred to the city attorney or bankruptcy counsel. (**Ex. 8.**) Subsequently, Hillview retained Laura Day DelCotto as counsel.

4. On April 16, 2014, Hillview offered to settle the Judgment by conveying the Property, and by making one payment of $10,000.00 to Truck America (**"City Offer 1"**).  (**Ex. 9.**)  After nine years of litigation, this was Hillview's first settlement offer that entailed the payment of any money to Truck America.  This offer represented approximately 0.076% of the amount that Hillview owed at that time.  On April 22, 2014, Truck America rejected this offer, questioned Hillview's good faith, and identified ways to cut expenses and generate revenue. Truck America suggested that Hillview consider raising taxes, because Hillview's tax rates were less than half of the average for Kentucky fourth-class cities, and/or issuing bonds to retire the Judgment indebtedness.  (**Ex. 10.**)

5.      On May 29, 2014, Hillview advised Truck America that further discussions would require that Truck America counter Hillview's self-proclaimed "good faith" $10,000.00 offer. (**Ex. 11.**)  On June 10, 2014, Truck America made a counterproposal to Hillview, under which Hillview would convey the Property for an agreed-upon credit, and pay Truck America a $13 million lump-sum to be raised by bond issuance.  Truck America pointed out that Hillview had abundant bonding capacity under the Kentucky Constitution, and the ability to generate revenue to service the additional bond indebtedness.  (**Ex. 12.**)  On information and belief, Hillview did not respond substantively to this counteroffer, and the parties proceeded to brief Hillview's (ultimately futile) motion for discretionary review with the Kentucky Supreme Court.

6.      On February 10, 2015, anticipating denial of discretionary review, Truck America demanded that Hillview increase taxes to the limitation set forth in Section 157 of the Kentucky Constitution to repay the Judgment, which had grown to $14.8 million.  (**Ex. 13.**)

7.      On February 27, 2015, Hillview's counsel responded, noting that it was "difficult for the City and its officials to make any decisions or to  discuss at great length and in great detail until a ruling comes down," and requesting that Truck America consider a stand-down period to discuss resolution upon entry of final judgment.  Hillview noted that it was considering seeking relief under Chapter 9.  (**Ex. 14.**)

8.      On March 4, 2015, Truck America responded noting that Hillview had not attempted to negotiate in good faith with Truck America, and that it was ineligible for Chapter 9 for a variety of reasons, including that Hillview had not bargained with any other constituents, had not advised what Truck America's (or anyone else's) treatment would be under a plan of adjustment, and had failed to take advantage of its abundant bonding and taxing capacity. Nonetheless, Truck America proposed a conditional stand-down period under which the Property

would be conveyed and Truck America would temporarily forbear from taking additional action while the parties conducted a supervised mediation over the damages award. (**Ex. 15.**)

9.    On March 25, 2015, after nearly 10 years of litigation, the Kentucky Supreme Court denied Hillview's Motion for Discretionary Review, exhausting Hillview's appellate rights and making the Judgment final. *See City of Hillview v. Truck America Training, LLC*, No. 2014-SC-00293, 2015 Ky. LEXIS 1580.

10.    On March 29, 2015, Hillview transmitted to Truck America a copy of its 2014-15 annual budget. (**Ex. 16.**) Among other things, the 2014-2015 budget included a line-item appropriation of $250,000.00 for "legal" expenses.

11.    On April 1, 2015, the parties entered into an Agreement implementing the process proposed above in Paragraph 8. In addition to establishing the mediation framework and the Property conveyance, the parties agreed to a $815,300.00 credit for the conveyance, and that the Judgment payoff was $14,191,519.99, which continued to accrue interest at 12%. (**Ex. 17.**)

12.    On April 21, 2015, the parties conducted an in-person mediation in Louisville supervised by former bankruptcy judge Steven Rhodes. At the mediation, Hillview made no monetary offers to Truck America. At the conclusion of the mediation, Judge Rhodes recommended that the parties resolve the dispute in exchange for a payment from Hillview of $5 million to be raised via bond issuance, and an assignment of the proceeds of any malpractice claims owned by Hillview against its former city attorney, which Truck America valued at $1 million. Truck America informed Judge Rhodes that it would reluctantly agree to these terms, but Hillview would not agree and requested additional time to consider the proposal, and to obtain pricing details for the $5 million bond.

13.     On April 23, 2015, Hillview provided Truck America a document illustrating the debt service on the recommended $5 million bond. (**Ex. 18.**) Over the 25-year term of the proposed issuance, the average payment would have been roughly $372,000.00 per year.  During that term, Hillview's existing two bond issuances would roll off, first in 2023 (relieving it of a $128,000 annual payment) and again in 2030 (relieving it of a $90,000 annual payment).

14.     On April 28, 2015, Hillview formally rejected the mediator's proposal. (**Ex. 19.**) Hillview stated that the debt service on the bond issuance was "prohibitive," but Hillview did not provide financial projections to justify that conclusion, or to enable Truck America to evaluate it.[1]   In addition, Hillview advised that it had "support from the City's other creditors and constituents to seek a plan of adjustment." However, no other creditors or constituents participated in the mediation, and no terms of a "plan of adjustment" were proposed to Truck America. In addition, Hillview made a counteroffer of $2 million, plus an assignment of the malpractice claim proceeds.  This was Hillview's second monetary offer ("**City Offer 2**"), and entailed repayment of 14% of the outstanding Judgment balance.  On information and belief, Hillview had not sought discounts from other creditors, let alone of this magnitude.

15.     On April 29, 2015, Truck America's counsel corresponded with Hillview's counsel to request additional detail on the nature of communications, if any, with Hillview's other creditors.  (**Ex. 20.**)  Hillview's counsel responded later that day (**Ex. 21**), illustrating that there had actually been no substantive discussions over a plan with other creditors:

> There is no plan draft/term sheet/anything in writing.  The conversations are more general and just that we want to work with everyone to develop an appropriate plan of adjustment.    As I told you, the 2 GO bonds still have to figure out who is on first on calling shots, and who is/can be counsel.  I have urged them to get that done ASAP.  Thanks.

---

[1]On information and belief, Hillview did not prepare or analyze (and still has not prepared or analyzed) financial projections beyond its current year.

16.     On April 30, 2015, Truck America filed a Petition for a Writ of Mandamus against the City Council, its members, its Mayor, and its Clerk in the case of *Truck America Training LLC v. Hillview City Council et al.,* Case No. 15-CI-407 (the "Mandamus Action"). (**Ex. 22.**)  Therein, Truck America requested that the court compel the respondents to raise taxes.

17.     On May 7, 2015, counsel for Truck America and Hillview met in Frankfort with representatives of Kentucky's Department of Local Government and the Kentucky League of Cities to brainstorm possible resolutions of the Judgment.  (**Ex. 23.**)  No creditors other than Truck America attended this meeting, no terms of a plan of adjustment were proposed or discussed, and no settlement offers were exchanged at this meeting.

18.     On May 15, 2015, counsel for Hillview provided counsel for Truck America with audited financial statements and budgets for the prior 5 year period.  (**Exs. 24-29.**)

19.     On May 27, 2015, the Mandamus Action respondents filed an Answer.  (**Ex. 30.**)

20.     On June 19, 2015, Hillview forwarded its budget for 2015-2016. (**Ex. 31.**)  Among other things, this included an appropriation of $300,000.00 for "legal" expenses.

21.     On June 24, 2015, Truck America filed a Motion (the "**Motion**") for  issuance of a writ of mandamus in the Mandamus Action.  (**Ex. 32.**)  Therein, Truck America argued that Section 159 of the Kentucky Constitution requires cities to raise taxes in order to pay authorized indebtedness, with statutory interest, within 40 years of its incurrence.  Further, Truck America argued that Hillview had abundant tax capacity to generate the needed revenue.  Truck America noted that Hillview could generate in excess of $4.7 million per year by increasing three categories of tax, all while staying within constitutional limits.  Truck America argued that:

- Hillview's *ad valorem* tax rate of $0.1168/$100 was significantly lower than the $0.75/$100 ceiling imposed by Section 157 of the Kentucky Constitution, and that Hillview could constitutionally raise this tax by a factor of 6.42, generating an incremental $3,931,397.00 per year;

- Hillview's occupational tax rate of 1.5% was below the 2.2% rate of Metro Louisville, had no legal limitation, and was lower than at least twelve other similarly-sized Kentucky cities, and that a modest increase to 2.0% would generate an incremental $500,000.00 per year;

- Hillview's insurance premium tax of 5% had no legal limitation, was below the rate of many similarly-sized Kentucky cities, and that doubling this rate to 10% would generate an additional $330,000.00 per year.

22.     On July 25, 2015, Hillview responded to Truck America's Motion.  (**Ex. 33.**) Hillview stated that it needed additional time to "develop a plan to continue to provide necessary government services while generating revenue to pay the Judgment."  Importantly, Hillview did not dispute that it was *capable* of increasing taxes to generate the $4.7 million annually as set forth in Paragraph 21.  Subsequently, oral argument on the Motion was set for August 20, 2015.

23.     On July 30, 2015, counsel for Truck America offered to provide 60 days of additional time for Hillview to formulate the "plan" referenced in its response, provided that Hillview agreed to file the "plan" in open court, and to make a partial interest payment to be credited to the Judgment.  (**Ex. 34.**)

24.     On August 6, 2015, by telephone, counsel for Hillview rejected Truck America's July 30 proposal and offered to satisfy the Judgment by paying $200,000.00 per year for 40 years, with no interest.  This was Hillview's third monetary offer ("**City Offer 3**").  Assuming a 6% discount rate, the present value of this proposal is roughly $777,000.00.  Assuming a 12% discount rate (based on the post-judgment rate), the present value is $85,974.39.

25.     Also on August 6, 2015, counsel for Truck America rejected this offer, noting that $200,000.00 was less than what Hillview had budgeted for legal expenses for the past two years (*see infra* ¶¶ 10, 20), and that City Offer 3 was economically *worse* than City Offer 2.  (**Ex. 35.**)

26.     On information and belief, Hillview voted to authorize its Chapter 9 filing at a meeting on August 17, 2015, and on August 19, 2015 issued a press release stating that it was filing because it had failed to obtain a "settlement agreement" with Truck America.  The press release stated that Hillview would continue "working to develop a plan to pay this judgment," but did not indicate that it had discussed the terms of any such plan with Truck America or any other creditor.  No other creditors are referenced in the press release.  (**Ex. 36.**)

27.     On August 18, 2015, counsel for Hillview indicated that the Chapter 9 would be filed before the oral argument in the Mandamus Action set for August 20, 2015.  Hillview indicated that it did not want to file Chapter 9, but that it would not obtain a $5 million bond issuance.  Hillview noted that "a lack of any counteroffer to last offer is an issue." (**Ex. 37.**)

28.     Also on August 18, 2015, Truck America made a counteroffer, under which Hillview would obtain a $4 million bond, and make a separate direct payment to Truck America of $800,000.00 for 10 years.  (**Ex. 38.**)  The total payments under this offer would be $12 million, a 20% discount without considering the present value of the direct payments.  On information and belief, no other creditor has been asked to consider a discount of any amount.  Truck America also identified numerous ways to raise revenue, including very modest increases in *ad valorem* taxes (4% annually), occupational taxes (0.3%), insurance premium taxes (5%), the redirection of the annual "legal" fee appropriation, and the rolloff of certain tax abatements and bonds.  Truck America identified $1.3 million annually in additional revenue, even though annual payments to (or for the benefit of) Truck America would never exceed $1.1 million.

29.     On August 19, 2015, Hillview rejected Truck America's offer.  (**Ex. 39.**)  The transmittal contained no analysis of the revenue items that Truck America had identified, and offered no financial projections.  Hillview, however, counteroffered to resolve the Judgment for

a payment of $2,000,000.00 (the "**City Offer 4**"), which, of course, was worse than the City Offer 2 made in April. *See infra* ¶ 14.

30.    Later on August 19, 2015, faced with a counteroffer that showed conclusively that Hillview had in fact moved backwards from the post-mediation City Offer 2, Truck America made what would be its final settlement offer.  (**Ex. 40.**)  Truck America offered to settle for what was, in essence, the mediator's recommendation:  a $5 million bond, payments over time of an additional $1 million (because the malpractice claim was not assignable), and payment of Truck America's attorneys' fees from the mediation forward.  Hillview rejected this offer by email less than one hour later.  (**Ex. 41.**)

31.    On August 20, 2015, in order to prevent a hearing on the Motion in the Mandamus Action, Hillview filed its Chapter 9 petition.

<u>**LEGAL STANDARD**</u>

Hillview filed for bankruptcy relief under Chapter 9.  This is not a routine procedure, and courts should view Chapter 9 petitions "with a jaded eye." *In re Suffolk Reg'l Off-Track Betting Corp.*, 462 B.R. 397, 414 (Bankr. E.D.N.Y. 2011) (quoting *In re N.Y.C. Off-Track Betting Corp.*, 427 B.R. 256, 264 (Bankr. S.D.N.Y. 2010)).[2]  "The bankruptcy court's jurisdiction should not be exercised lightly in Chapter 9 cases, in light of the interplay between Congress's bankruptcy power and the limitations on federal power under the Tenth Amendment." *Id.* (quoting *In re Sullivan Reg'l County Refuse Disposal Dist.*, 165 B.R. 60, 92 (Bankr. D.N.H. 1994)).

The Court should thus "scrutinize" Chapter 9 petitions.  *N.Y.C. OTB*, 427 B.R. at 264.  To be a debtor under Chapter 9, an entity must meet the eligibility requirements of 11 U.S.C. § 109(c).  That section provides:

An entity may be a debtor under chapter 9 of this title if and only if such entity –

---

[2] For the Court's convenience, Truck America has appended as **Ex. 44** a table of the cases cited herein.

(1)     is a municipality;

(2)     is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;

(3)     is insolvent;

(4)     desires to effect a plan to adjust such debts; and

(5)     (A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(C) is unable to negotiate with creditors because such negotiation is impracticable; or

(D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

Hillview bears the burden to establish by a preponderance of the evidence each of the elements of eligibility under 11 U.S.C. § 109(c). *In re City of Detroit*, 504 B.R. 191, 222-223 (Bankr. E.D. Mich. 2013) (citing *City of Vallejo*, 408 B.R. 280, 289 (9th Cir. BAP 2009); *In re City of Stockton, Cal*., 493 B.R. 772, 794 (Bankr. E.D. Cal. 2013)).   It must satisfy *each* of the mandatory provisions of § 109(c)(1)-(4), and *one* of the requirements under § 109(c)(5).   *In re Boise County*, 465 B.R. 156, 166–167, 2011 Bankr. LEXIS 3346, *17-19 (Bankr. D. Idaho 2011) (citing *Vallejo*, 408 B.R. at 289). If a petitioner fails to meet the eligibility requirements of Section 109(c), the bankruptcy court must dismiss the petition under § 921(c). *Id*.; *see also In re County of Orange*, 183 B.R. 594, 599 (Bankr. C.D. Cal. 1995)); 6 *Collier on Bankruptcy* ¶ 921.04[4] (Alan N. Resnick & Henry J.  Sommer eds., 16th ed. 2011).

11

As shown below, Hillview cannot meet its burden of establishing its Chapter 9 eligibility. The Court should dismiss the petition.

**ARGUMENT**

I.    **HILLVIEW CANNOT SATISFY ANY STATUTORY ALTERNATIVE UNDER SECTION 109(C)(5).**

Hillview is required to satisfy one of the four subsections of Section 109(c)(5): (A) that it has the agreement of a majority of each class of impaired claims; (B) that it has in good faith negotiated with, but failed to obtain the consent of, a majority of each impaired class; (C) that creditor negotiations were impracticable; or (D) that it reasonably believed a creditor would obtain a preference. *See In re Ravenna Metro. Dist.*, 522 B.R. 656, 680–81 (Bankr. D. Colo. 2014) (citing 11 U.S.C. § 109(c)(5)) (outlining four possible means of satisfying Section 109(c)(5)). Hillview does not contend that it has the agreement of each impaired class, but rather that it has satisfied one or more of the alternative requirements in Sections 109(c)(5)(B), (C), or (D). *See* Dkt. No. 20 at ¶ 42. As shown below, Hillview fails to satisfy any of these provisions and, therefore, is ineligible to proceed under Chapter 9.

A.    **Hillview failed to negotiate in good faith over a plan with its creditors.**

A municipality satisfies Section 109(c)(5)(B) if it negotiates in good faith with creditors holding at least a majority in amount of the claims in each class that the municipality intends to impair under a plan but is unable to obtain such creditors' agreement. Courts have concluded that § 109(c)(5)(B) requires a municipality to negotiate in good faith *over a contemplated or proposed plan of adjustment* that the municipality intends to file in a Chapter 9 case, or at least offer to creditors an outline or term sheet for a plan of adjustment, which designates classes of creditors and their proposed treatment. The Bankruptcy Appellate Panel for the Ninth Circuit explained this threshold statutory requirement in greater detail in *Vallejo*:

Section 109(c)(5)(B)'s plain language does not explicitly state whether the negotiations with creditors must concern a proposed plan of adjustment.  Nor do § 109(c)(5)(B)'s sister provisions, §§ 109(c)(1)-(4), clearly and unambiguously support a conclusion that the negotiations must concern a plan.  Our plain language inquiry, however, is not limited to the single phrase "negotiated in good faith with creditors".  Rather, we give it a meaning consistent with the remaining language in the statute.

The full text of the statute provides us with a clue as to how we should determine what is required under the statute.  The statute references adverse treatment ("impairment") to the interests of numerically important creditors ("majority . . . of each class") and specifically calls out creditors holding at least a majority in the amount of claims of each class that a petitioner intends to impair under a plan.  The statute then adds that a petitioner satisfies this subsection if it is unable to obtain agreement from those particular creditors after the negotiations.  In the end, *the negotiations referred to in the statute cannot be separated from its context, which clearly and unambiguously refers to the treatment of impaired creditors under a plan.*

The significance the Code places on the lack of agreement with creditors identified by § 109(c)(5)(B) bolsters our interpretation that the *negotiations must cover their treatment under a plan*.  The creditors identified by § 109(c)(5)(B) are those necessary to confirm a consensual plan of adjustment.  It is not by coincidence that Congress centered § 109(c)(5)(B) around the most critical creditors to confirming a plan, i.e., the majority of the impaired in every class.

Finally, because § 109(c)(5)(B) involves classification and impairment, it would be difficult for a municipality to prove that it negotiated in good faith with creditors it intends to impair unless the municipality had a plan of adjustment drawn or at least outlined when it negotiated with the creditors.  *Thus, we conclude that the plain language of § 109(c)(5)(B) requires negotiations with creditors revolving around a proposed plan, at least in concept.*

13

408 B.R. at 296-97 (citations omitted) (emphasis added).[3]

Bankruptcy courts have specifically indicated that a municipality's general prepetition "workout" negotiations—even if extensive and conducted in good faith—are not alone sufficient to satisfy § 109(c)(5)(B)'s negotiation requirement. *See Vallejo*, 408 B.R. at 296–97 ("While Vallejo unsuccessfully negotiated with Unions regarding the alteration of the [collective bargaining agreements], the evidence was undisputed that Vallejo never negotiated with Unions or any of its creditors *over the possible terms of a plan of adjustment*.") (emphasis added); *see also Pierce County*, 414 B.R. at 713 ("As in *Vallejo*, it is undisputed that the Debtor and the Eagles Watch Creditors participated in extensive prepetition negotiations. However, also as in *Vallejo*, there is no evidence that the Debtor ever negotiated prepetition with any of its creditors *over the possible terms of a plan of adjustment*.") (emphasis added); *see also Sullivan County*, 165 B.R. at 78 ("It has been held that good faith negotiations per se are not sufficient to meet the statutory requirement *unless they revolve around the negotiating of the terms of a plan* that could be effectuated if resort is required to Chapter 9 of the Bankruptcy Code.") (emphasis added).

---

[3] That negotiations must revolve around a plan is the majority rule. *See also Detroit*, 504 B.R. at 267 (court persuaded that negotiations must be "over a proposed plan"); *N.Y.C. OTB*, 427 B.R. at 273–74 (debtor complied with Section 109(c)(5)(B) where it "engaged in negotiations with creditors regarding the possible terms of a reorganization plan prior to its chapter 9 Petition"); *In re Pierce County Hous. Auth.*, 414 B.R. 702, 712-13 (Bankr. W.D. Wash. 2009) (Section 109(c)(5)(B) not satisfied where "there is no evidence that the Debtor ever negotiated prepetition with any of its creditors over the possible terms of a plan of adjustment"); *In re Cottonwood Water & Sanitation Dist.*, 138 B.R. 973, 975–79 (Bankr. D. Colo. 1992) ("The concept is that the [municipality] must desire to effect a 'plan' within the meaning of section 941 and must have negotiated in good faith concerning that proposed plan"); *In re Valley Health Sys.*, 383 B.R. 156, 161 (Bankr. C.D. Cal. 2008) (following *Cottonwood,* debtor "must be prepared to show that it engaged in good faith negotiations with its creditors concerning the possible terms of a plan to be effected pursuant to section 941 of the Bankruptcy Code."); *Sullivan County*, 165 B.R. at 78–79 ("While the statutory requirement does not require a formal plan as such, some sort of comprehensive plan is required as one of the 'screening factors' to avoid a too early and rapid resort to the bankruptcy courts by municipalities."); *In re Ellicott Sch. Bldg. Auth.*, 150 B.R. 261, 266 (Bankr. D. Colo. 1992) (Section 109(c)(5)(B) not satisfied requirement "where the substantive terms of a proposal were not open to discussion" or compromise).

1.   ***Hillview completely failed to negotiate with its creditors concerning a proposed plan of adjustment, outline, or term sheet.***

Hillview alleges it complied with § 109(c)(5)(B) because it "has been involved in extensive and ongoing negotiations with [Truck America] concerning potential options for an agreed upon payment amount and schedule for satisfaction of the Judgment" and has had "discussions" with other creditors.  Dkt. No. 20 at ¶ 38.  While Truck America does not dispute it has had general "workout" negotiations concerning the Judgment, pre-petition "workout" negotiations with one creditor are not sufficient to satisfy Section 109(c)(5)(B).  *See Vallejo*, 408 B.R. at 296–97; *Pierce County*, 414 B.R. at 713; *Sullivan County*, 165 B.R. at 78.  Rather, Hillview was required to negotiate with its creditors concerning a contemplated or proposed plan of adjustment that Hillview intended to file under Chapter 9, or at the very least, have provided such creditors with an outline or term sheet for a plan of adjustment.  *See Vallejo*, 408 B.R. at 296–97; *N.Y.C. OTB*, 427 B.R. at 273–74; *Pierce County*, 414 B.R. at 712–13; *Cottonwood*, 138 B.R. at 975–79; *Valley Health Sys.*, 383 B.R. at 161; *Sullivan County*, 165 B.R. at 78–79; *Ellicott School*, 150 B.R. at 266.  While Hillview concedes "some outline or term sheet of a plan which designates classes of creditors and their treatment is necessary," it is simultaneously silent about how it actually complied with this requirement.  *See* Dkt. No. 20 at ¶ 37.  Indeed, no outline or term sheet has been provided to creditors, and Hillview's counsel acknowledged prior to filing that no such thing existed.  *See* **Ex. 21** ("conversations are more general" and "there is no plan draft/term sheet/anything in writing.").

Even if no writing is required, Hillview failed to negotiate over the basic parameters of a plan.  Indeed, it is not evident that Hillview has even considered what a plan of adjustment will entail.  For instance, how will claims against Hillview be classified?  Which classes will impaired?  How will those classes be treated?  How can creditors evaluate the confirmability and

feasibility of a plan, particularly in the absence of financial projections?[4]  Section 109(c)(5)(B) requires that Hillview at least negotiate classification and proposed treatment with creditors, and Hillview simply did not do so.  Just as in *Vallejo* and *Pierce County*, there is absolutely no evidence Hillview ever negotiated in good faith with any of its creditors *over the terms of a proposed plan of adjustment*, and Hillview, therefore, cannot satisfy § 109(c)(5)(B).

### 2.    *Hillview's pre-petition negotiations were bilateral and did not involve any creditors other than Truck America.*

The plain language of § 109(c)(5)(B) requires a municipal debtor to negotiate in good faith with "*creditors* holding at least a majority in amount of the claims of each class that [the municipality] intends to impair under a plan."[5] 11 U.S.C. § 109(c)(5)(B) (emphasis added).  Hillview's recitation of facts makes clear that its pre-bankruptcy negotiations were wholly bilateral in nature, involving only Hillview and Truck America.  *See* Dkt. No. 20.

As to other creditors, Hillview states only that it "generally discussed the possible filing with [their] only other main creditors, [their] GO bond contacts through KLC and PBI Bank . . ." *See* Eadens Decl., Dkt. No. 21 at ¶ 24; *see also* Dkt. No. 20 at ¶ 21.  Hillview proclaims that the issues with these creditors "are not difficult, challenging or contested" but offers no more detail about the substance of the "discussions," including whether Hillview requested that these creditors—or any others—make concessions to adjust its debt obligations prior to Hillview's bankruptcy filing.  *See* Dkt. No. 20 at ¶ 37.  Beyond these minimal "discussions," Hillview makes no allegations about any "negotiations" with any creditor other than Truck America.  *See id.*  The plain language of Section 109(c)(5)(B) and interpreting authority make clear that a

---

[4] The complete absence of financial projections, in and of itself, is sufficient to disqualify Hillview from satisfying § 109(c)(5)(B), because creditors require basic information to have meaningful negotiations over a plan.  *See Detroit*, 504 B.R. 191, 269–70 (". . . the data room did not contain all the necessary data to make a meaningful evaluation of the proposal to creditors.")  Here, not only did Hillview fail to make a "proposal to creditors," but provided far less financial information than the court found to be insufficient in *Detroit*.

[5] Because Hillview entirely failed to negotiate concerning a potential plan of adjustment, or provide an outline or term sheet, its creditors have no way of knowing which creditors Hillview intends to impair under a plan.

bilateral negotiation with one creditor is not sufficient where a municipality intends to impair other creditors but has failed to negotiate with them.  *See, e.g., N.Y.C. OTB*, 427 B.R. at 274 ("Here, it is clear that NYC OTB engaged in negotiations with *creditors* regarding the possible terms of a reorganization plan prior to filing its chapter 9 Petition.") (emphasis added).

### 3.  *Hillview regressively bargained with Truck America during the parties' bilateral pre-bankruptcy "workout" negotiations.*

Even if purely-bilateral workout negotiations satisfy Section 109(c)(5)(B) (and Truck America submits that they do not), the Court should examine the quality of those negotiations to determine if Hillview conducted them in good faith.  *See, e.g., Ellicott School Bldg.*, 150 B.R. at 266 (no good faith negotiations if putative debtor exhibits "unwillingness to compromise").  Regressive bargaining itself exhibits an unwillingness to compromise, and in other contexts, has been held to exhibit a lack of good faith.  *See, e.g., Golden Eagle Spotting Co. v. Brewery Drives*, 93 F.3d 468, 471 (8th Cir. 1996) (in labor context, regressive bargaining showed lack of good faith).  Here, Hillview's settlement offers over time indicate an unwillingness to compromise, and illustrate regressive bargaining tactics:

| Offer and Date | Present Value of Payments | Judgment Percentage |
|---|---|---|
| City Offer 1  (4/16/14) | $10,000.00 | 0.076% |
| City Offer 2  (4/28/15) | $2,000,000.00 + malpractice claim | 14.08% |
| City Offer 3  (8/6/15) | $777,777.50 (6% discount rate) | 5.47% |
| City Offer 4  (8/19/15) | $2,000,000.00 | 14.08% |

The lack of good faith in Hillview's offer to pay less than a tenth of one percent (after the Judgment was affirmed) should be self-evident, particularly because it sought no concessions from other creditors.  If that were not enough, Hillview moved *backwards* from City Offer 2 to City Offer 3, and again from City Offer 2 to City Offer 4   These are not the negotiating tactics of an entity willing to compromise, but are more consistent with an entity set on frustrating a creditor it happens to dislike, which cannot satisfy Section 109(c)(5)(B).

**B.    Hillview cannot show negotiations with its creditors were impracticable.**

Hillview further contends it satisfied Section 109(c)(5) because negotiation with its creditors "became impracticable." *See* Dkt. No. 19 at ¶ 5. Hillview interprets impracticability far too broadly. Impracticability exists when a debtor's creditors are too numerous to make negotiations workable or when the debtor's assets are at immediate risk, neither of which applies in Hillview's case. Consequently, Hillview's reliance on Section 109(c)(5)(C) fails.

Congress adopted Section 109(c)(5)(C) specifically "to cover situations in which a very large body of creditors would render prefiling negotiations impracticable." *Sullivan County*, 165 B.R. at 79 n.54. Impracticability is found most often where there are thousands of creditors involved. *See Detroit*, 504 B.R. at 271 (more than 100,000 creditors); *Valley Health Sys*., 383 B.R. at 165 (more than 5,000 creditors); *Pierce County*, 414 B.R. at 714 (over 7,000 creditors and parties in interest).

Here, Hillview's claim of impracticability cannot be based on its number of creditors. Unlike the petitioners in *Detroit* or *Valley Health Systems*, Hillview has identified less than two hundred creditors. *See* Dkt. Nos. 26 & 28. Furthermore, despite Hillview's ability to clearly identify all of its creditors, Hillview admits it never even tried to talk to them, except for its "other main creditors" who hold some vehicle loans and one building loan. *See* Dkt. No. 21 at ¶ 24. Mayor Eadens touts the "excellent relations" he has with those creditors and confirms Hillview is "fiscally sound" and "will still be paying these debts as they become due in the ordinary course." *Id.* For Hillview to pick and choose to pay only friendly creditors at the sole expense of Truck America does not satisfy the standard for impracticability, and as set forth below in Sections III and IV, actively disproves any good faith desire to adjust debts. *See Ravenna Metro. Dis*., 522 B.R. at 683 (concluding that a debtor failed to prove impracticability where it failed to participate meaningfully in negotiations with its creditors).

### C.  Hillview could not have reasonably believed that Truck America attempted to obtain a preference under Section 547.

Hillview maintains that it had reason to believe "that as part of the mandamus process, [Truck America] was seeking and might obtain some ruling or collection which could be avoidable under bankruptcy law." *See* Dkt. No. 20 at ¶ 40.  Hillview cannot reasonably believe that Truck America's request for a court order compelling it to raise taxes, as it was constitutionally-required to do, constitutes a bankruptcy preference.[6]  *See, e.g. Hyman v. Bast Amron LLP (In re Cargo Transp. Servs.),* 502 B.R. 875, 879 (Bankr. M.D. Fla. 2013) (transferee of settlement funds did not receive preferential transfer where transfer was "entirely subject to federal court orders, federal law, and rules of professional responsibility.").

Section 109(c)(5)(D) is aimed at curtailing aggressive creditor activity that may result in a preferential payment, which by its nature is unfair to other creditors.  *See, e.g., Boise County*, 465 B.R. at 169–171 (judgment creditor threatened "imminent execution on the County's accounts" and demonstrated "increasingly aggressive attempts to collect on its Judgment").  To the contrary, Truck America's proposed writ of mandamus, if entered, would have *augmented* Hillview's assets and not disadvantaged any other creditors.  Indeed, because it would have simply increased Hillview's revenue line, such a writ would not have had *any* impact on Hillview's ability to satisfy the debts of other creditors or to meet "the health, safety, and welfare of its citizens."  *See* Dkt. No. 20 at ¶ 41.  Accordingly, Truck America's mandamus action could not have resulted in an avoidable transfer under Section 547 and does not satisfy Section 109(c)(5)(D).

---

[6]In support of this position, Hillview alleges that "[b]ankruptcy policy disfavors a race to the courthouse."  *See* Dkt. No. 20 at ¶ 41.  It is worth noting that Truck America's litigation against Hillview began more than a decade ago in April 2005, and Truck America's Judgment was entered more than three years ago in August 2012.

## II.    THE CITY OF HILLVIEW IS NOT INSOLVENT AS REQUIRED BY SECTION 109(C)(3).

Mere balance sheet insolvency does not satisfy the insolvency requirement for Chapter 9 purposes.  Rather, Hillview must prove it is "generally not paying its debts as they become due" or that it will be "unable to pay its debts as they become due."  *See* 11 U.S.C. § 109(c)(3); *see also* 11 U.S.C. §101(32)(C).  Hillview fails the first test because its refusal to pay the Judgment does not establish that it is not *generally* paying its debts as they come due.  With ample available revenue sources, Hillview cannot show, with the requisite certainty, that it cannot pay the Judgment.  Hillview has made clear that it does not want to raise taxes and does not want to issue bonds to meet its obligations.  Though a city does not need to wait until it is well beyond the point of financial ruin, it must do more than raise a petulant "I don't want to."  Hillview is not an insolvent municipality and is not eligible for Chapter 9 relief.[7]

### A.    The City of Hillview Cannot Show That It Is Generally Not Paying Its Debts As They Fall Due.

Hillview is generally able to pay its ordinary obligations as they come due in the ordinary course.  *See* Dkt. No. 20 at ¶ 22.  Hillview acknowledges that it can pay every debt, except for the one obligation it does not want to pay: the Judgment.  *Id*.  The purpose of Chapter 9 relief is to provide temporary protection while the municipality establishes a plan of adjustment with its *creditors*.  *See Valley Health Sys.*, 383 B.R. at 163.  Chapter 9 relief is not designed to allow a city to evade a legitimate creditor; it is designed to address a city suffering "bona fide financial distress that is not likely to be resolved" without bankruptcy protection.  *See Stockton*, 493 B.R. at 778.  "Chapter 9 offers a solution to chronic economic distress caused by costs and revenues spiraling in opposite directions, but Chapter 9 is not available to a city simply because it is

---

[7] Investment analysts appear to concur that Hillview is not insolvent. *See* Brian Chappatta & Steven Church, *Kentucky City Claiming Bankruptcy May Not Be Broke, Moody's Says*, BLOOMBERGBUSINESS, Aug. 31, 2015, *available at* http://www.bloomberg.com/news/articles/2015-08-31/kentucky-city-claiming-bankruptcy-may-not-be-broke-moody-s-says (last visited Sep. 29, 2015).

financially distressed." *In re City of Bridgeport*, 129 B.R. 332, 336 (Bankr. D. Conn. 1991). Truck America has provided Hillview with many opportunities to satisfy the Judgment, all of which could have been accomplished without taking the unnecessary step of becoming the first city in Kentucky to file for bankruptcy. Contrary to Hillview's assertion that "it has exhausted all other options," Hillview has not made any meaningful attempt to raise revenues to pay the Judgment. It is constitutionally able to raise more than $4.7 million in new revenue annually, *see infra,* ¶¶ 21–22, which would easily pay for a bond issuance sufficient to pay the Judgment in full. A city with such abundant taxing and bonding capacity is not insolvent for Chapter 9 purposes. The options which have been exhausted are those to challenge its obligation, not options to actually meet its obligation to Truck America.

While councilmembers and the residents may be subjectively reluctant to increase taxes, it does not follow that Hillview is insolvent. *See Ellicott School*, 150 B.R. at 265. Hillview residents enjoy a tax rate significantly lower than that of similar municipalities and at a fraction of the constitutional maximum, making any suggestion of a "death spiral" if taxes were raised incredible. *See In re Villages at Castle Rock Metro. Dist. No. 4*, 145 B.R. 76, 84 (Bankr. D. Colo. 1990). Hillview has taken no concrete, meaningful pre-bankruptcy steps to address the Judgment, and refuses to make any changes to its discretionary spending.[8] *See Vallejo*, 408 B.R. at 293–94 (discussing pre-bankruptcy filing efforts taken by city in affirming bankruptcy court's finding of insolvency). In cases where courts have found the municipality to be insolvent, the quality of the financial distress was significantly different. Even cities with budget deficits of $16 million have been held to not be insolvent. *See Bridgeport*, 129 B.R. at 339.

---

[8] Indeed, between its 2014-15 and 2015-16 budget years, Hillview has approved significant pay increases for its Mayor, City Clerk, Deputy Clerk and City Council. *See* **Exs. 16 and 31**. The Mayor's salary increased between budgets by roughly 66%. Spending generally between budgetary periods increased by 13%, and Hillview expends nearly $140,000.00 annually for "recreation." *See id.*

To establish insolvency, Hillview must show that it is *generally* unable to pay its debts. Hillview has stated that it generally can pay its debts. It refuses to pay—or make any meaningful effort to pay—the Judgment. The failure to pay a single category of claims, while paying all other debts, cannot be the basis for insolvency. *See Boise County*, 465 B.R. at 171. Cities are not permitted to manufacture their insolvency by being recalcitrant in meeting a single obligation. *See Sullivan County*, 165 B.R. at 73 ("[I]t is difficult to imagine any municipality that could not 'engineer its way in the bankruptcy courts' by simply refraining from paying its debts from available assets and then claiming the resulting inability to pay debts as they came due justified bankruptcy court relief."). Hillview has not established insolvency.

### B.    The City Of Hillview Cannot Show That It Is Unable To Pay Its Debts As They Come Due.

Rather than levy and collect the taxes and fees necessary to pay the Judgment, as it is required to do by Section 159 of the Kentucky Constitution, Hillview sought bankruptcy protection. Insolvency under § 101(32)(c)(ii) is analyzed on a cash-flow basis. *Hamilton Creek Metro. Dist. v. Bondholders Colo. BondShares (In re Hamilton Creek Metro. Dist.)*, 143 F.3d 1381, 1386 (10th Cir. 1998). Speculative probability will not suffice; Hillview must show that its inability to pay is certain. *Id.* But on the eve of bankruptcy, the Bullitt Circuit Court was considering a motion in the Mandamus Action which would have required Hillview to raise the revenue necessary to pay the Judgment. *See* **Ex. 32.** A municipality's unwillingness to do what is necessary to generate revenue does not establish insolvency under the second test. *See Ravenna Metro. Dist.*, 522 B.R. at 679 (debtor's unwillingness to collect fees does not establish an inability to pay with certainty). Hillview's unwillingness to take unpopular action in the face of a Kentucky constitutional mandate does not render it unable to pay its debts as they come due.

When the Judgment was entered against Hillview, the Kentucky Constitution required it to collect funds sufficient to cover the interest and establish a sinking fund to satisfy the Judgment within forty years.  KY. CONST. § 159.  Hillview, rather than addressing the Judgment, chose to operate under a constitutionally-infirm budget which did not even provide for the payment of the interest, let alone the balance of its obligation.  *See* KY. CONST. § 157b.  Hillview's tax rate is currently 15% of the constitutional maximum *ad valorem* tax rate.  Hillview cannot show that it is unable to satisfy the Judgment over the course of forty years.  Without that certainty, Hillview is not insolvent.  Since it can meet its obligation to Truck America by deploying its tax power as the Kentucky Constitution requires, Hillview cannot prove insolvency based on an inability to pay its debts as they come due.

In order to be insolvent, Hillview must establish that its level of financial distress is much more significant than the evidence supports.  Hillview's 2015-16 budget projects a surplus.  (**Ex. 31.**)  Hillview admits that is able to meet its ordinary expenses.  *See* Dkt. No. 20 at ¶ 22.  Hillview can easily resolve the payment of the Judgment outside of the context of a Chapter 9 bankruptcy.[9]  And if Hillview officials remain unwilling to do so voluntarily, the Mandamus Action can compel them to do what the Kentucky Constitution requires.

III.    **HILLVIEW DOES NOT DESIRE TO EFFECT A PLAN TO ADJUST ITS DEBTS AS REQUIRED BY SECTION 109(C)(4).**

To be eligible under Chapter 9, a municipality also must "desire[] to effect a plan to adjust [its] debts."  11 U.S.C. § 109(c)(4).  Here, the evidence does not indicate that Hillview possesses that desire.  To the contrary, it shows that Hillview took little concrete action towards a

---

[9] Truck America submits that, in considering insolvency, the Court should consider the terms under which Hillview could have realistically resolved the Judgment, because Truck America offered to settle for far less than the full amount.  As described in detail in Truck America's final settlement offer, **Ex. 40**, Hillview could have resolved the matter with roughly $6.2 million spread out over time.  Had Hillview prepared and analyzed multi-year projections, it would have been evident that the cost to service those payments was manageable via only modest tax increases.

plan of adjustment prior to filing this case and that Hillview's actual "desire" has been to evade payment on Truck America's Judgment, and to make Truck America shoulder the bulk of Hillview's manufactured financial problems.

There is no specific test to apply to determine if a municipality desires to effect a plan to adjust its debts. *See Vallejo*, 408 B.R. at 295 (concluding that "no bright-line test exists for determining whether a debtor desires to effect a plan . . ." due to the "highly subjective nature of the inquiry."). Instead, the municipality must satisfy this requirement with "direct and circumstantial evidence." *See Detroit*, 504 B.R. at 265. Under this inquiry, "courts have only looked at the municipality's objective actions as an entity." *In re City of San Bernardino, Cal.*, 499 B.R. 776, 787–88 (Bankr. C.D. Cal. 2013) (placing "little weight" on Statement of Qualifications as municipality can easily prepare conclusory statement). Courts have determined that a statement indicating intent to effect a plan, combined with efforts made towards negotiating and drafting a plan, fulfills this requirement. *See Pierce County*, 414 B.R. at 710 (municipality satisfied § 109(c)(4) by "stating its intent to effect a plan to adjust its debts" and "drafting and negotiating a Plan and Amended Plan"); *see also id.* (collecting cases showing that evidence may include attempts to resolve claims, submitting a draft plan of adjustment, or "by other evidence customarily submitted to show intent.") The evidence must demonstrate that "the purpose of the filing of the chapter 9 petition [was] not simply . . . to buy time or evade creditors." *Detroit*, 504 B.R. at 265 (citing *Collier on Bankruptcy*, ¶ 109.04[3][d], at 109-32).

Hillview's pre-bankruptcy actions and negotiations illustrate that it does not desire to adjust its debts. Unlike the petitioners in *Pierce County* and *Detroit*, Hillview has never produced a plan of adjustment, an outline, or a term sheet that indicates how its creditors will be classified, or how those classes will be treated, in a proposed plan of adjustment. *See Pierce*

24

*County*, 414 B.R. at 710 (debtor spent "extensive time drafting and negotiating" proposed plan); *see also Detroit*, 504 B.R. at 266 (debtor submitted to creditors a plan to adjust City's debtor before filing case).   While Section 109(c) does not require a finalized or formal plan of adjustment, a municipality must show "some sort of comprehensive plan."  *Sullivan County*, 165 B.R. at 78; *see also Vallejo*, 408 B.R. at 297 ("We emphasize that while a complete plan is not required, some outline or term sheet of a plan which designates classes of creditors and their treatment is necessary.").   Here, not only did Hillview fail to produce a plan of adjustment, outline, or term sheet to creditors before it filed this case, it wholly failed to discuss or negotiate such a plan.   And, while Hillview further states that it "continues to review its cash flows, revenue sources, and regular expenses to formulate potential methods to satisfy the Judgment," Hillview has never produced multi-year projections to Truck America.  *See* Dkt. No. 20 at 35.

The evidence shows that Hillview's actual "desire" in filing its petition is to evade (or at best, minimize) payment of the Judgment, and that its "plan of adjustment" (as best as one can tell) will be to pay as little as possible to Truck America while keeping tax rates low and paying all other creditors in full.   Hillview's bankruptcy petition was filed only after Hillview expressly rejected numerous alternatives to bankruptcy suggested by Truck America, including cutting expenses, generating revenue through Hillview's tax powers, or pursuing bond financing to ameliorate the Judgment's post-judgment rate.  (**Exs. 10, 38.**) Indeed, the Mandamus Action was filed because Hillview rejected Truck America's demand to use its tax powers to pay down the Judgment.  (**Exs. 13, 22.**) On information and belief, Hillview never considered using its tax powers before the filing, much less "to a reasonable extent," as has been required by other Chapter 9 courts.  *Sullivan County*, 165 B.R. at 82.   Indeed, just one day before Hillview's

petition was filed, Councilwoman Karen Johnson posted the following to the "Hillview Neighborhood Watch and Happenings" Facebook Page:

> We really didn't have any other option.  I think we did what is best for our city including our own families. . . .We did have the first reading on next years tax rates at Monday nights meeting, the second reading and vote will be during our next meeting on Monday, September 21st.  You should contact the council folks before then to express any concerns.  ***But I know that I will not be voting to increase any of our tax revenues!***

*See* Aug. 19, 2015 Facebook Post, **Ex. 42** at 6. (emphasis added).  It is not mere coincidence that Hillview's leaders publicize philosophical opposition to raising taxes and that Hillview filed this case to prevent oral argument in the Mandamus Action.  Rather, it illustrates inappropriate "late hour litigation tactics" to avoid payment of the Judgment.  *See Sullivan County*, 165 B.R. at 82.

What limited evidence is available regarding the "plan of adjustment" Hillview intends to pursue in this case indicates that it intends to pay Truck America as little as possible and apparently pay every other creditor in full.  Hillview does not intend to impair its general obligation bondholders, as Mayor Jim Eadens has stated that Hillview is "fiscally sound" and that it plans to continue paying those creditors.  (*See* Dkt. No. 21 at ¶ 24) ("We are fiscally sound and will still be paying these debts as they come due in the ordinary course."); *see also* Shelly Sigo, *Hillview, Ky. Plans to Leave Bonds Alone in Bankruptcy*, THE BOND BUYER, Aug. 27, 2015, attached as **Ex. 42.**)  This suggests that Hillview's intent is not to effect a plan to adjust its debts, but to take whatever actions are necessary to minimize payment to Truck America.

## IV.   HILLVIEW DID NOT FILE ITS PETITION IN GOOD FAITH PURSUANT TO SECTION 921(C).

It is within the sound discretion of this Court to dismiss a Chapter 9 petition if it finds Hillview did not file the petition in good faith.  *Sullivan County*, 165 B.R. at 79 (citing 4 *Collier on Bankruptcy* p. 921 (15 ed.)).  Section 921(c) of the Bankruptcy Code states that, "[a]fter any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the

debtor did not file the petition in good faith or if the petition does not meet the requirements of this title."  Even if Hillview could otherwise establish, by the requisite standard of proof, that it is an entity eligible for Chapter 9 relief, the petition is nonetheless subject to dismissal pursuant to § 921(c) because Hillview's petition was not filed in good faith.  *Vills. at Castle Rock*, 145 B.R. at 81.  Unlike the "good faith" analysis under § 109(c)(5)(B), which focuses on the content and form of the negotiations with creditors prior to the filing, the "good faith" inquiry under § 921(c) focuses on the purpose behind the filing, and whether the filing was for legitimate reasons.  *See County of Orange*, 183 B.R. at 608 (discussing the reasons for county's filing of petition and noting lack of evidence indicating that the filing was made for any purpose other than to adjust debt); *see also Pierce County*, 414 B.R. at 714 (". . . strict hurdles to filing Chapter 9 were implemented to ensure that it was considered . . . only as a last resort.")

"Good faith is not defined in the Bankruptcy Code nor is there any meaningful discussion of the Congressional intent behind the good faith requirement found in the legislative history of this section."  *Sullivan County*, 165 B.R. at 80.  Consequently, bankruptcy courts examining Chapter 9 filings have looked to discussions of good faith in the Chapter 11 context to determine whether a Chapter 9 petition has been filed in good faith.  *Id*. at 82; *see also N.Y.C. OTB*, 427 B.R. at 279 (applying Chapter 11 case law); *County of Orange*, 183 B.R. at  608 (applying Chapter 11 case law).  Such courts have determined that the primary function of the good faith requirement is to "ensure the integrity of the reorganization process by limiting access to its protection to those situations for which it was intended."  *Sullivan County*, 165 B.R. at 82; *see Vills. at Castle Rock*, 145 B.R. at 81 (describing "good faith" as requirement that "prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes.").  However, the presence or

27

absence of good faith does not always turn on the "subjective sincerity or insincerity of the debtor" but rather the "financial, economic and legal situation of the debtor." *Sullivan County*, 165 B.R. at 67–68.  Indeed, "a 'sincere' debtor could file a petition in bad faith if the facts as presented demonstrated that the petition was not filed for reasons consistent with the intended purposes of the Bankruptcy Code." *Id.* at 68 (citation omitted).  To determine whether a Chapter 9 petition has been filed in good faith, bankruptcy courts examine the following factors:

> (i) the debtor's subjective beliefs; (ii) whether the debtor's financial problems fall within the situations contemplated by chapter 9; (iii) whether the debtor filed its chapter 9 petition for reasons consistent with the purposes of chapter 9; (iv) the extent of the debtor's prepetition negotiations, if practical; (v) the extent that alternatives to chapter 9 were considered; and (vi) the scope and nature of the debtor's financial problems.

*N.Y.C. OTB*, 427 B.R. at 279 (quoting 6 *Collier on Bankruptcy* 921.04 [2].); *see also Stockton*, 493 B.R. at 794.

Even if Hillview could otherwise satisfy the eligibility requirements under § 109(c)—which it cannot—Hillview's petition must still be dismissed because it was not filed in good faith.  As an initial matter, Hillview's financial problems do not fall within the situations contemplated by Chapter 9, and the filing is therefore not consistent with the purposes of Chapter 9. *Compare Sullivan County*, 165 B.R. at 79–82 (finding that debtor did not file Chapter 9 petition in good faith where its financial problem was essentially a one creditor contractual dispute) *with In re Town of Westlake*, 211 B.R. 860 (Bankr. N.D. Tex. 1997) (the possibility of "frozen funds, multiple litigation, and disannexation of a substantial portion of its tax base" shows that the debtor did not file its Chapter 9 case for an improper purpose); *see also San Bernardino*, 499 B.R. at 790-91 (insolvency, inability to pay obligations, and inability to balance budget unless permitted to reorganize in Chapter 9).  Here, Hillview admits it is able—and will continue—to pay its ordinary obligations as they come due in the ordinary course, going so far as

to state that it is "fiscally sound."  *See* Dkt. No. 21 at ¶ 24.  This is not a situation contemplated by Chapter 9.

Furthermore, Hillview argues that Truck America is the only creditor it cannot pay, but it refused to take reasonable actions to pay down the Judgment prior to filing the petition.  As in *Sullivan County*, Hillview "deliberately refrained from accessing their primary asset to attempt to resolve their financial problems" before this case was filed when it refused to raise taxes.  165 B.R. at 79–82; *see also* Johnson Post, **Ex. 6** at 6.  This deliberate inaction, in and of itself, is evidence of a filing lacking in good faith:

> ***Although the law is rarely painted in strokes of black and white, there are occasionally cases and situations in which there is a need and justification for a "bright line" rule on a particular legal question.  This is such a situation.***  Municipalities that wish to come into bankruptcy under chapter 9 in my judgment must, ***at a minimum***, demonstrate that before filing they ***either used their assessment or taxing powers to a reasonable extent, or in their pre-petition negotiations have committed to the use of those powers as part of a comprehensive and appropriate work out of their financial problems.***  If they have undertaken that endeavor in good faith, and nevertheless have failed to reach an accommodation with their creditors, they then may be entitled to chapter 9 relief if they are otherwise qualified.

*Id.* at 82 (emphasis added).  Hillview never used its taxing powers pre-bankruptcy to address the Judgment, much less "to a reasonable extent."  *Id.*  This blatant refusal coupled with Hillview's failure to consider other pre-bankruptcy alternatives, such as the issuance of a new bond or cutting expenditures shows clearly that the filing was not "a final alternative chosen as a last resort."  *Id.*  Rather, the objective evidence shows that Hillview's actual desire was to enter Chapter 9 as a means to evade (or at best, to minimize) Truck America's Judgment.[10]  Accordingly, Truck America requests that the Court make a finding that Hillview's Chapter 9 filing lacks good faith and dismiss it for this reason as well.

---

[10] *See supra* Section III.

**V.    KENTUCKY LAW DOES NOT EFFECTIVELY AUTHORIZE CHAPTER 9 RELIEF.**

The statute purporting to enable Kentucky municipalities to seek bankruptcy relief suffers from a fatal flaw: it refers only to the now-repealed Bankruptcy Act. As set forth below, Kentucky courts are not in the business of fixing even obvious drafting mistakes.  Because that is a task for the General Assembly, which has not acted, this case should be dismissed.

Under Section 109(c)(2), municipalities must be "specifically authorized . . . by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor" under Chapter 9. "[E]xplicit authorization *must be written, 'exact, plain, and direct* with well-defined limits so that nothing is left to inference or implication.'" *N.Y.C. OTB*, 427 B.R. at 267 (quoting *In re Timberon Water & Sanitation Dist.*, 2008 Bankr. LEXIS 3345, at *2 (Bankr. D.N.M. June 18, 2008) (internal quotations omitted) (emphasis added).

Hillview invokes KRS 66.400 for authorization.  However, the plain text of KRS 66.400 authorizes filings under a federal statute that no longer exists:

> Any taxing agency or instrumentality **as defined in Chapter IX of the Federal Bankruptcy Act** as amended by the Acts of Congress of August 16, 1937, Chapter 657, June 22, 1938, Chapter 575, March 4, 1940, Chapter 41, June 28, 1940, Chapter 438 and acts amendatory and supplementary thereto or acts extending the date of expiration thereof, as the same may be amended or extended from time to time, may file a petition for the composition of its debts and to do all things necessary to comply with the provisions of **the Federal Bankruptcy Act**. . . .

(emphasis added).  KRS 66.400 permits a "taxing agency" or "instrumentality" as defined in "the Federal Bankruptcy Act" to file for Chapter 9. The problem is that the Federal Bankruptcy Act was repealed and Congress enacted the Bankruptcy Code in 1978. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, §§ 101 & 401, 92 Stat. 2549 (codified as amended at 11 U.S.C. §§ 101-1532). The Bankruptcy Code neither supplemented nor amended the Bankruptcy Act, but

overtly repealed it. Accordingly, KRS 66.400's specific reference to the Bankruptcy Act makes the statute ineffective for specific authorization for Hillview to seek bankruptcy relief.

A similar enabling-statute conflict was addressed in *Boise County*. *See* 465 B.R. 156. There, the enabling statute authorized any "taxing district" in Idaho to file a petition under Chapter 9. "Taxing district" was defined as "a 'taxing district' as described in [the Federal Bankruptcy Act of 1898]." *Id*. at 167. The court, like Hillview here, faced a dilemma because the Federal Bankruptcy Act—the statute on which the Idaho enabling statute directly relied—had been repealed and the current Bankruptcy Code lacks a definition of "taxing district." The court phrased the issue as follows:

> The current Bankruptcy Code lacks a definition of "taxing district." Instead, as noted above, it uses the term "municipality" to describe those entities that may seek relief under chapter 9, provided they are authorized to do so under state law. *See* § 109(c). This raises questions regarding the interpretation and effect of Idaho Code §§ 67-3901 and -3903. For example, does Idaho Code § 67-3901 continue to incorporate by reference the description of "taxing district" contained in the now-repealed Bankruptcy Act of 1898, does it somehow embrace the definition of "municipality" in the current version of the Code, or is the definition of "taxing district" for purposes of Idaho Code § 67-3903 left open-ended or untethered due to the repeal of the Bankruptcy Act?

*Boise County* considered how the Idaho Supreme Court would interpret Idaho's enabling statute and determined the court would likely interpret the statute as having been intended to authorize Idaho municipalities such as Boise County to file a petition under Chapter 9. *Id*. at 167–68.

While its analysis is useful, the Court should distinguish *Boise County* for two reasons. First, the Idaho enabling statute is much more general and elastic than KRS 66.400.  It allows any taxing district to file a petition mentioned in the "Federal Bankruptcy Statute," whereas KRS 66.400 refers only to the now-repealed Bankruptcy Act.  *Compare* KRS 66.400 *with* Idaho Code § 67-3903. Second, while the *Boise County* court concluded the Idaho Supreme Court

31

would interpret the enabling statute to find Boise County eligible, the same interpretation would be unlikely by Kentucky courts.   Unlike Idaho, the Kentucky Supreme Court would likely require strict adherence to the statutory language of KRS 66.400.

Kentucky courts are not in the business of correcting obvious drafting errors in statutes. As the Kentucky Supreme Court recognized in *Kentucky Assoc. of Chiropractors, Inc. v. Jefferson County Medical Soc.,* 549 S.W.2d 817, 821 (Ky. 1977), "In determining the intent of the General Assembly in enacting legislation, the primary rule is to ascertain the intention from the words employed in the enacting statute, rather than surmising what may have been intended but was not expressed." (citing *Gateway Construction Co. v. Wallbaum, Ky*., 356 S.W.2d 247, 249 (Ky. 1962)).[11] Applying that logic here, Kentucky courts would look directly to the language of KRS 66.400 and determine that the reference to the repealed Bankruptcy Act means what it says, and fails to authorize use of the Bankruptcy Code.   The General Assembly could amend the language of KRS 66.400 to permit such a filing, but it has not done so.   Because no effective statutory authorization exists, the Court should dismiss Hillview's petition.

---

[11] The General Assembly knows how to effectively cross-reference the Bankruptcy Code.   *See, e.g.*, KRS 224.46-520(5); KRS 286.9-110(1)(t); KRS 381.9171(3).

## CONCLUSION

WHEREFORE, Truck America requests that an order be entered dismissing the Chapter 9 Petition filed by the City of Hillview, Kentucky.

Respectfully submitted,

*/s/ Brian H. Meldrum*
Brian H. Meldrum (bmeldrum@stites.com)
Brian R. Pollock (bpollock@stites.com)
Brian M. Bennett (bbennett@stites.com)
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202
Telephone: (502) 587-3400

and

J. Scott Wantland
Wantland Law, PLLC
P.O. Box 515
319 South Buckman Street
Shepherdsville, Kentucky 40165

COUNSEL FOR CREDITOR,
TRUCK AMERICA TRAINING, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed on October 1, 2015 using the Court's ECF notice system, which shall send electronic notice thereof to all persons requesting such notice, and via U.S Mail upon parties designated as not receiving electronic filings.

*/s/ Brian H. Meldrum*
Brian H. Meldrum

1049536:8:LOUISVILLE